A07A1012. HESTER v. THE STATE.
(651 SE2d 538)

BERNES, Judge.

Following a jury trial, Mario Hester appeals from his conviction for armed robbery and possession of a firearm during the commission of a crime. He challenges the sufficiency of the evidence supporting his conviction and contends the trial court erred in admitting his pretrial statements to the investigating officer and in allowing the state to introduce into evidence Hester's notice of alibi. He also contends that the prosecutor engaged in misconduct during closing argument and finally, that his trial counsel rendered ineffective assistance. We discern no reversible error and affirm.

On review from a criminal conviction, we view the evidence in the light most favorable to the prosecution to determine only whether any rational trier of fact could have found the essential elements of the crimes charged beyond a reasonable doubt. *Newton v. State*, 280 Ga. App. 709, 710 (634 SE2d 839) (2006). We do not assess witness credibility or weigh the evidence, but determine only its sufficiency. Id.

So viewed, the evidence showed that on August 18, 2001, Hester and his two cousins, co-defendants Malcolm Jackson and Corey

Johnson, perpetrated an armed robbery against the assistant manager of a convenience store, a young woman who was then dating Jackson. The victim's duties with the store included the making of bank deposits. On the morning in question, Hester drove Jackson and Johnson to a gas station adjacent to the convenience store where the victim worked. Hester and Jackson remained in the vehicle while Johnson waited behind a nearby dumpster for the victim to leave the store with the bank deposit. After Jackson told Johnson via walkie talkie that the victim had exited the store, Johnson jumped into the back of the victim's car as she entered the vehicle, held a gun to the back of her head, and demanded the money. Johnson, who was wearing a red hat, blue shirt, khaki pants, and a camouflaged mask, took the victim's bank bag which contained nearly $10,000 cash. The victim ran back into the store and ordered a co-worker to call 911.

The armed robbery was witnessed by a customer in the convenience store who followed Johnson as he absconded across the parking lot to an adjacent gas station and into the adjoining woods. The witness watched Johnson remove his mask, but ran out of the woods when Johnson noticed his presence. The witness saw Johnson holding both the gun and the bank bag and watched as Johnson fled from the scene in Hester's vehicle.

The responding law enforcement officer took statements from the victim, the victim's co-worker, and the witness. He also secured the crime scene and put out an alert for Hester's vehicle, which was ultimately shared with the local media. The victim, unaware of her boyfriend's involvement, had her co-worker call Jackson to inform him that she had been robbed and to request that he come to the store. The victim was not permitted to speak to Jackson until after she had given a statement to law enforcement.

A day or two after the robbery, Jackson asked the victim to rent him a U-Haul trailer under the guise that he and his cousin "need[ed] to move something" and did not have a credit card. Hester likewise had his girlfriend rent a Chevrolet Suburban with a trailer hitch.

The sheriff's office received a tip that a vehicle matching the description of that used in the robbery had been placed under a cover after the robbery, although it had been prominently parked in an apartment complex parking lot prior to that time. When a sheriff's deputy arrived to interview the tipster, he was informed that three males had loaded the vehicle onto a trailer attached to a Chevrolet Suburban with a yellow dealer tag and left the scene. An investigator scouting the area saw the Suburban with a trailer hitch return and was able to determine from the tag the name of the dealer that had rented the car.

Another investigator subsequently learned that the Suburban had been rented to Latasha Thomas, Hester's girlfriend. On August

20, the investigator went to Thomas's address, where he almost immediately observed Hester enter the Suburban. He followed, hoping that perhaps Hester would lead him to the suspect vehicle and/or others who knew of its location. Instead, Hester drove to a shopping center, parked in the fire lane, and went into a jewelry store.

The investigator entered the jewelry store with his badge visible and asked who had parked in the fire lane. Hester admitted that he was the driver of the offending vehicle, but had no identification on him. The investigator then took Hester to the Criminal Investigation Division ("CID") office in order to obtain additional information from him. The investigator inventoried the vehicle before moving it from the fire lane and found a blue t-shirt, a red baseball cap, and a newspaper from the previous day that was opened to an article about the armed robbery.

Upon arrival at CID, Hester was informed that he was a possible suspect in the armed robbery case. After waiving his *Miranda* rights, Hester gave two different statements in which he implicated himself as having participated in the robbery. Hester, Jackson, and Johnson were subsequently arrested and charged with armed robbery and possession of a firearm during the commission of a crime, and were tried separately.

1. The evidence set forth above was sufficient to convict Hester of armed robbery. Hester, however, contends that the victim knowingly participated in the crime and that he is therefore guilty only of the lesser crime of theft by taking. We find Hester's argument unavailing.

Under Georgia law, a person commits an armed robbery "when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon. . . ." OCGA § 16-8-41 (a). A participant to a crime may be convicted even though he or she is not the person who directly commits the crime, if that person intentionally aids or abets in the commission of the crime. OCGA § 16-2-20. On the other hand, a person commits the offense of theft by taking if he or she "unlawfully takes . . . any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken." OCGA § 16-8-2.

Both Hester and the victim testified during trial. Hester claimed that the victim knowingly assisted in the planning and perpetration of the crime, while the victim denied any such participation in the crime. The trial court properly instructed the jury on both the crimes of armed robbery and theft by taking, and expressly stated that in the event that the jury did not believe that Hester was guilty of armed robbery beyond a reasonable doubt, it could find him guilty of the lesser offense of theft by taking. The jury obviously rejected Hester's version of events, and the evidence was sufficient to authorize the

jury's finding of guilt on the armed robbery charge. See *Jordan v. State*, 281 Ga. App. 419, 422 (1) (636 SE2d 151) (2006); *Buruca v. State*, 278 Ga. App. 650, 652 (1) (629 SE2d 438) (2006).

2. Hester next argues that the recorded statements he gave to law enforcement were not voluntary and thus should have been excluded from the evidence presented at trial.

> In ruling on the admissibility of an in-custody statement, a trial court must determine whether, based upon the totality of the circumstances, a preponderance of the evidence demonstrates that the statement was made freely and voluntarily. . . . Unless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of the defendant's statement at a *Jackson v. Denno*[1] hearing will be upheld on appeal.

(Citations omitted.) *Grier v. State*, 273 Ga. 363, 364-365 (2) (541 SE2d 369) (2001).

Hester contends that his statements were coerced based on certain alleged threats made by the investigating detective prior to the recording of the statements. Significantly, no evidence of the alleged threats was offered into evidence at the *Jackson-Denno* hearing. The arresting investigator testified that, shortly after Hester arrived at the CID office, the investigator informed him that he was a suspect in the armed robbery. Hester did not appear to be under the influence of drugs or alcohol. The investigator then obtained general biographical information from Hester. After the investigator learned that Hester had a tenth grade education and could read and write English, he advised Hester of his *Miranda*[2] rights and confirmed that Hester understood each of the rights about which he had been advised. The investigator then read a "waiver of counsel" form to Hester as Hester followed along using a copy of the form. Hester thereafter agreed to speak with the investigator, waived his right to counsel, and signed the "waiver of counsel" form. On the form, which was admitted into evidence at the hearing, Hester affirmed that no person had threatened him or promised him anything in exchange for his statement.

Hester did not testify at the hearing, and the investigator specifically denied making any promises or threats to induce Hester's statement. Based upon this evidence, the trial court was authorized to find that Hester freely and voluntarily gave a statement after

---

[1] 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

[2] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

having knowingly waived his *Miranda* rights. *Hester v. State*, 282 Ga. 239, 243 (5) (647 SE2d 60) (2007); *Grier*, 273 Ga. at 364-365 (2).

3. Hester next assigns error to the state's introduction into evidence of his notice of intention to present an alibi defense. Prior to trial, Hester had given notice of an alibi defense, but did not present any alibi evidence at trial. The prosecutor nevertheless queried Hester during cross-examination about the notice and in fact introduced the notice into evidence. Hester contends that he was prejudiced by the introduction of the notice because it discredited him before the jury. He contends both that (a) the trial court erred when it allowed the introduction of the evidence, and (b) his trial counsel was ineffective for failing to withdraw the notice in writing prior to the commencement of the trial.

(a) Under Georgia law, upon a written demand by the prosecuting attorney, a defendant who intends to present an alibi defense must provide the prosecutor with written notice of that intent prior to trial. OCGA § 17-16-5 (a). In the event that a defendant changes course, he can withdraw the notice, in which case the notice and the defendant's intention to rely upon an alibi defense are not admissible. OCGA § 17-16-5 (e).

On appeal, Hester claims that the trial court erred by allowing the state to present evidence of his notice of alibi because, even though his counsel did not withdraw the notice, he abandoned the notice when he did not present any evidence of an alibi during the trial. The record reflects that Hester did not make an objection to the introduction of the notice of alibi on this specific ground at trial, but rather asserted only that the notice was a privileged communication.

> When [evidence] is tendered an objection must be made, affording the court opportunity to rule *upon the admissibility of the [evidence] upon the grounds then urged and in the context of the matter as it then appears*, and failure to make a timely objection to [evidence] when it is offered results in a waiver of any objection that might have been urged.

(Citations and punctuation omitted; emphasis in original.) *Carradine v. State*, 234 Ga. App. 330 (506 SE2d 688) (1998). See also *Norman v. State*, 197 Ga. App. 333, 334 (2) (398 SE2d 395) (1990). Thus, Hester has waived this claim of error on appeal. *House v. State*, 227 Ga. 257 (1) (181 SE2d 31) (1971).

(b) Hester further argues that his counsel was ineffective for failing to withdraw the notice. In order to prove ineffective assistance, Hester must establish both that his counsel's performance was deficient and that the alleged deficiency resulted in prejudice to him. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674)

(1984). There is a strong presumption that counsel's actions are the result of sound trial strategy. *Thomas v. State*, 273 Ga. App. 357, 361 (4) (615 SE2d 196) (2005). But regardless of counsel's performance, reversal is not warranted if there is no reasonable probability that the outcome of the trial would have been different absent counsel's alleged errors. Id.; *Arnold v. State*, 284 Ga. App. 598, 603 (6) (645 SE2d 68) (2007).

Here, Hester has not shown that he was prejudiced by the introduction of his notice. The prosecution presented the jury with four other inconsistent versions of events offered by Hester, thus bringing into question his credibility irrespective of the challenged evidence. During Hester's initial recorded interview at CID, he claimed that on the day of the robbery, Johnson had asked him for a ride to the store. Hester drove his vehicle to the gas station adjacent to the subject convenience store, and watched as Johnson went around to the backside of the gas station. Hester claimed that as he was turning his vehicle around, Johnson ran toward him, jumped back in his car, and demanded that he "keep going." Hester then learned for the first time that Johnson had snatched a deposit bag from "some girl." Hester and Johnson then went to the home of Hester's girlfriend, where Hester allegedly expressed anger at Johnson's actions and Johnson gave Hester between $1,000 and $1,500 cash.

Several hours later on the same day, Hester gave a second recorded statement to the investigator. In that statement, Hester said that prior to the robbery, he met Jackson and Johnson at a nearby park, where the two co-defendants were devising a plan to snatch the bank bag from the victim. Hester admitted that he agreed to be the driver, and that he drove Jackson and Johnson to the gas station adjacent to the subject convenience store. He said that Johnson hid behind a dumpster, and that Jackson used a walkie talkie to alert Johnson as the victim left the store. After the robbery, the defendants went to the home of Hester's girlfriend, where they divided the money. Jackson got the largest share and Hester "got the driver's share," of approximately $2,000-$2,500. Hester claimed that the trio had never discussed the use of a weapon during the crime. He also denied that the victim participated in or had any knowledge about the impending robbery.

At trial, Hester related yet another series of events. He testified that on the morning of August 18, Jackson came to the house of Hester's girlfriend and asked Hester to drive him to meet Johnson at a park. There, Hester overheard Jackson and Johnson discussing plans of a robbery. Hester then drove them to the gas station but was unaware that they were planning on robbing the victim at that time. Hester said that Jackson was informing him of the plan after he dropped Johnson off and as he was turning the car around. Hester

claimed that Jackson told him at that time that the victim was in on the robbery scheme and explained that he had denied the use of a weapon in his previous statements because the victim was expected to freely give Johnson the money. After the robbery, the trio went to the house of Hester's girlfriend, where Hester allegedly expressed anger that his car had been used in the robbery. Hester claimed that the victim kept the defendants informed as to the status of the investigation, and her tips led them to cover and ultimately move the car.

Hester also testified for the first time at trial that approximately a month before the robbery, he had engaged in a conversation with Jackson and the victim during which they had discussed a plan to rob the store. This plan was allegedly foiled when a co-worker of the victim informed the owner of the store about the robbery plans and the store owner then had someone follow the victim while she made future bank drops.

Finally, the state introduced a letter that Hester had written to the prosecuting attorney prior to the trial. In the letter, Hester claimed that Jackson and the victim "set up the whole incident," and offered to plead guilty to theft in order to avoid the trial.

In light of the numerous inconsistencies in Hester's various recitations of events, Hester has failed to show a reasonable probability that the outcome of the trial would have been different had counsel withdrawn the notice of intention to rely upon an alibi defense.

4. In his final enumeration of error, Hester argues that reversal of his conviction is warranted because (a) the prosecutor engaged in misconduct when he made unfair and improper remarks about Hester and his counsel during closing argument and (b) his counsel rendered ineffective assistance when he failed to object to the remarks. We disagree.

The challenged remarks occurred during closing argument when the prosecutor commenced his review of Hester's varying accounts of the crime.

> STATE: Let's go back to the defendant's numerous versions of the event and how close they come. Here's that alibi notice. . . . And you remember this letter that he wrote . . . where he says he's willing to plead guilty to a theft charge. . . . [In] the first statement he gave, . . . he only mentioned dropping Johnson off and not knowing what was going on. In the second statement that he gave he said, he knew about the armed robbery. But the one thing that stayed consistent at the beginning, before the defense lawyers got involved, before the law books started getting read —

THE COURT: Wait a minute. Wait a minute. Now, before the defense lawyers got involved, you don't need to argue that. Wait a minute.

STATE: Understood, Judge.

THE COURT: That's beyond the pale. Don't discuss what — this man's an honorable lawyer. You're suggesting that's not a reasonable deduction from the evidence. That when the defense lawyer got involved, that the defendant began to mislead.

STATE: Well, —

THE COURT: That's not a reasonable deduction.

STATE: I understand, Your Honor.

(a) As Hester has acknowledged in the appellate brief, his counsel failed to object to the prosecutor's argument, and therefore, the issue of whether the argument amounted to misconduct was not preserved for appellate review. See *Evans v. State*, 191 Ga. App. 364, 366 (3) (381 SE2d 760) (1989) (declining to reverse a conviction based upon the prosecutor's improper argument in the absence of a proper objection, motion for mistrial, or request that the jury be instructed to disregard the argument). See generally *Hall v. State*, 180 Ga. App. 881, 882-883 (3) (350 SE2d 801) (1986) (discussing how to properly preserve an objection to comments made during a closing argument).

(b) Pretermitting whether the prosecutor's argument amounted to misconduct, Hester cannot establish that he was prejudiced by his counsel's failure to object to the statement.

> Where improper statements have been made by counsel in the presence of the jury, it is the duty of the judge to endeavor to remove from the minds of the jury improper impressions made by unfair argument; and in determining the proper method the judge is vested with a sound discretion.

(Citation omitted.) *Pugh v. State*, 280 Ga. App. 137, 140 (4) (633 SE2d 439) (2006).

As illustrated by the record quoted above, the trial court reprimanded the prosecutor, sua sponte, and in so doing bolstered the credibility of Hester's counsel. The action taken by the trial court was thus sufficient to counter any arguably improper insinuations by the prosecutor, even in the absence of an objection from counsel. See *Pugh*, 280 Ga. App. at 140 (4); *Mitchell v. State*, 157 Ga. App. 683, 684 (3) (278 SE2d 192) (1981); *McFarland v. State*, 137 Ga. App. 354, 357-358 (6) (223 SE2d 739) (1976). "[T]his is not a case where the statement was so prejudicial that no instruction of the trial court

could eradicate the statement from the jurors' minds." *Pugh*, 280 Ga. App. at 140 (4). Thus, this allegation of error is without merit.

   *Judgment affirmed. Blackburn, P. J., and Ruffin, J., concur.*

DECIDED SEPTEMBER 6, 2007.

   *Barbara B. Claridge*, for appellant.
   *Daniel J. Craig, District Attorney, Madonna M. Little, Assistant District Attorney*, for appellee.