**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/

**September 28, 2012**

# In the Court of Appeals of Georgia

A12A1577. THOMAS v. THE STATE.

PHIPPS, Presiding Judge.

A jury found Sara Thomas and her daughter guilty of three counts of theft by shoplifting and Thomas, alone, guilty of giving a false name to a police officer. Thomas appeals her convictions, contending that the trial court erred in admitting at trial her custodial statement. For the following reasons, we affirm.

Thomas contends that her custodial statement was not voluntarily made and that she was induced to make it because she feared that she and her daughter would be taken to jail and her grandchildren would be taken into the custody of the Georgia Department of Human Resources Division of Family & Children Services (DFCS). She argues that the "coercive environment" at the scene of the incident which led to

the suppression of her daughter's written statement should also have led to the suppression of her custodial statement.

At the *Jackson-Denno*[1] hearing, the arresting officer testified that on July 21, 2005, he responded to a call about a theft at a shopping mall. When he arrived at the mall, the complainant (apparently a store merchant ) pointed out the suspects to the officer. The officer approached Thomas and her daughter as they exited a store.

The officer explained to Thomas and her daughter that the police had been called because of a shoplifting report. The women denied that they had shoplifted. The officer asked them for identification. The daughter produced a Georgia identification card. Thomas stated that she did not have identification, but she gave the officer a name and date of birth. The officer transmitted that identification information to "dispatch and they ran it through GCIC." After the officer received a response from dispatch, he determined that Thomas had given him a false name, arrested her for that crime, and placed her in the back seat of his patrol vehicle. He testified that at this point, he had not decided whether to charge Thomas or her daughter with shoplifting.

---

[1] 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

The officer turned his attention back to the daughter, who was accompanied by minor children. He approached her vehicle, which was parked 15 yards away from his patrol car. He testified that as the daughter opened the door to put the children inside, he saw in plain view in the console area "a whole bunch of jewelry . . . just laying out in the open." Tags were on the jewelry, and the officer asked the daughter whether she had a receipt for them. The daughter stated that she had a receipt from a particular merchant, but produced none. The officer asked that jewelry store merchant about the daughter's purchases that day, and the merchant stated that the daughter had paid for ear piercings for one of the children but had not purchased any jewelry.

The officer testified that he then walked to his patrol vehicle, told Thomas what the jewelry store merchant had said, and read Thomas the *Miranda*[2] warnings. After he advised Thomas of her rights, he asked her whether she understood them, and Thomas replied that she did. He then asked Thomas whether she wanted to make a statement. Thomas told him that she had taken the items, that her daughter had a good job, and that she did not want her daughter to lose her job. The officer closed the back door of his patrol vehicle and re-approached Thomas's daughter, who was standing outside her vehicle, with the children inside. He told the daughter that Thomas had

---

[2] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

stated that she was "going to take this, the shoplifting charge." According to the officer, the daughter, who was not then in custody or under arrest, replied that Thomas "didn't do it all," and began naming stores from which she had shoplifted. The daughter then executed a written statement of confession, listing several stores from which she had stolen clothes and other items.

Thomas's daughter testified that she wrote the statement under the following circumstances. Thomas was in the patrol vehicle yelling, trying to talk to her. A police officer was hitting the vehicle and telling Thomas to "shut up" and that "somebody's going to admit to taking these clothes." The daughter stated that she was frustrated and crying, and the children were crying. The daughter testified that the arresting officer started "threatening me that he would call DFCS if I didn't write a statement and own up to the clothes." She testified that the officer told her what to write.

Thomas called one witness to testify, a person with whom her daughter had gone to school. The witness testified that she never saw Thomas on the scene. She testified that she heard kids crying and screaming and heard one child say, "I don't want my mommy to go to jail." The witness testified that when Thomas's daughter asked a police officer whether she could call someone to come pick up the children,

4

the officer told her, "[N]o, not until you write this." The witness testified that the officer just kept telling Thomas's daughter to "write" or he would call DFCS to pick up the children.

The officer testified that he did not threaten Thomas's daughter to write the statement, he did not promise her that she would not be charged if she wrote the statement, and he did not offer her any hope of benefit to write the statement.

Thomas did not testify. At the end of the hearing, the trial court ruled: "All right. I'm going to find in the case and totality of the circumstances that the false name statement of Ms. Sara Thomas and the *Mirandized* statement come in. As to [Thomas's daughter], we find that the – that the oral statement comes in, but the written statement is out."

> A custodial statement is admissible only if it was made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury. To determine whether the state has proven that a confession was made voluntarily, the trial court must consider the totality of the circumstances. The trial court sits as the factfinder in a *Jackson-Denno* hearing, and its resolution of factual issues will be upheld by the appellate court unless it is clearly erroneous.[3]

---

[3] *Presley v. State*, 251 Ga. App. 823, 824 (1) (555 SE2d 156) (2001) (citations and punctuation omitted); see OCGA § 24-3-50.

"The 'remotest fear of injury' that renders an incriminating statement involuntary and inadmissible under OCGA § 24-3-50 is 'physical or mental torture' or coercion by threats. This determination must be based on the totality of the circumstances."[4] "If there is a conflict as to whether or not a statement, admission, or confession was made freely and voluntarily, that question then becomes one of fact for determination by the jury, provided a prima facie showing is made by the state that such statement was made freely and voluntarily and without hope of benefit or fear of injury."[5] "On appeal, we accept the trial court's findings on disputed facts and credibility of witnesses unless clearly erroneous, but independently apply the legal principles to the facts."[6]

A review of the transcript of the *Jackson-Denno* hearing shows that Thomas presented no evidence which would authorize a finding that her custodial statement was inadmissible for the reasons she contends. Thomas argues that her custodial statement was not voluntarily made and that she was induced to make it by fear of

---

[4] *State v. Lynch*, 286 Ga. 98, 100 (1) (686 SE2d 244) (2009) (citations and punctuation omitted).

[5] *Newton v. State*, 132 Ga. App. 873 (2) (209 SE2d 690) (1974) (citation omitted).

[6] *Carter v. State*, 289 Ga. 51, 54 (5) (709 SE2d 223) (2011) (citation omitted).

being taken to jail. But the evidence showed that when Thomas made the statement at issue she was in police custody and had been arrested for giving the police officer a false name. Thus, contrary to her assertions, any fear of being taken to jail could not have induced her custodial statement.[7] Moreover, "[w]hether or not [Thomas] had been formally charged with the crime[s] for which [s]he was tried at the time h[er] statement[] w[as] taken would not affect [its] admissibility or voluntary character, but was simply a circumstance to be taken into consideration by the jury in weighing such statements. . . ."[8]

Concerning Thomas's argument that her custodial statement was not voluntarily made and that she was induced to make it by fear of her daughter being taken to jail and her grandchildren being removed from the scene by DFCS agents, Thomas was confined in a police vehicle 15 yards away when the arresting officer later allegedly made threatening statements to *her daughter*, not to Thomas.[9] And in

---

[7] See *Mungin v. State*, 183 Ga. App. 290, 291 (1) (358 SE2d 673) (1987) ("fear of injury" contemplated by OCGA § 24-3-50 must be induced by another, not self).

[8] Id. (citations omitted).

[9] *Hester v. State*, 287 Ga. App. 434, 437 (2) (651 SE2d 538) (2007) (trial court authorized to find that defendant freely and voluntarily gave statement after having knowingly waived *Miranda* rights, where no evidence of alleged threats to defendant was offered at *Jackson-Denno* hearing).

any event, there was no evidence that Thomas heard any officer state that he was considering taking her daughter to jail or that he would have representatives from DFCS pick up the grandchildren if the daughter did not issue a written statement of confession.

Notably, Thomas does not argue that the officer coerced her daughter into making her oral statement, which the daughter had given before the written statement and which the trial court did not suppress. The evidence showed that by the time of the "coercive environment" of which Thomas complains she had already made her statement.[10] There was no evidence that Thomas's custodial statement was induced by fear that her daughter would be arrested or that her grandchildren would be placed in the custody of DFCS.[11] The trial court was authorized to find that Thomas freely and voluntarily gave a statement after she knowingly waived her *Miranda* rights.[12]

---

[10] See *Mungin*, supra.

[11] See generally *Hester*, supra; cf. *Johnson v. State*, 277 Ga. App. 41, 43-44 (2) (625 SE2d 411) (2005) (trial court's denial of defendant's motion to suppress his custodial statements affirmed where defendant's testimony at *Jackson-Denno* hearing that he had confessed because the police threatened to arrest his wife and to have DFCS take his daughter was contradicted by two police detectives who testified that defendant was informed of his *Miranda* rights and waived them).

[12] See OCGA § 24-3-50; *Hester*, supra; *Johnson*, supra; *Presley*, supra; *Anderson v. State*, 224 Ga. App. 608, 609-610 (1) (481 SE2d 595) (1997) (statement

*Judgment affirmed. Ellington, C. J., and Dillard, J., concur.*



voluntary despite officer's statement to defendant that he was considering charging defendant's girlfriend as an accessory to the crime); *Lovell v. State*, 179 Ga. App. 98, 98-99 (1) (345 SE2d 645) (1986).