### A08A2308. FULLER v. THE STATE.
(672 SE2d 438)

JOHNSON, Presiding Judge.

A jury found John Fuller guilty of two counts of armed robbery, aggravated assault, and possession of a firearm by a convicted felon during the commission of a felony. Fuller appeals, alleging (1) the evidence was insufficient to support the jury's verdict, (2) the trial court erred in admitting evidence of a similar transaction, (3) the trial court erred in charging the jury, (4) the trial court erred in overruling one of his evidentiary objections, and (5) he received ineffective assistance of trial counsel. We find no error and affirm Fuller's convictions.

1. On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence; moreover, this Court determines evidence sufficiency and does not weigh the evidence or determine witness credibility.[1] "Resolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court."[2] As long as there is some competent evidence, even though contradicted, to support each necessary element of the state's case, this Court will uphold the jury's verdict.[3]

Viewed in that light, the evidence shows that on November 20, 2002, two employees at a U. S. Wireless store heard noises coming from the back of the store and went to investigate. Both victims saw Fuller in the back of the store. Fuller pointed a gun at them and demanded they give him all their money. Both victims were frightened, and Fuller commented that he was going to "blow [their] f—ing brains out."

Fuller marched both victims to the front of the store while holding them at gunpoint. He ordered one of the victims to open the cash register, and Fuller took all the money except the $1 bills from the cash register. Fuller then forced the victims into the store's bathroom. Fuller told the victims he had someone watching the front of the store and that if they came out of the bathroom or called the

---

[1] *Johnson v. State*, 279 Ga. App. 182, 183 (630 SE2d 778) (2006).

[2] *Odett v. State*, 273 Ga. 353, 353-354 (1) (541 SE2d 29) (2001).

[3] *Thomas v. State*, 273 Ga. App. 357, 358 (1) (615 SE2d 196) (2005).

police, he would kill them. However, as soon as he heard the store door shut, one of the victims ran out of the store.

The victim ran to his car and followed Fuller. Although the victim subsequently lost Fuller, he provided a 911 dispatcher with the tag number and description of the vehicle driven by Fuller. When the dispatcher ran the tag number, it came back registered to a vehicle matching the description provided by the victim. The car had been rented five days earlier by Fuller's wife. In addition to describing the car, the victim described the clothing worn by Fuller, including a dark blue sweatshirt and a dark jogging cap on his head.

As a similar transaction, the state introduced evidence that on the same day, 20 minutes earlier, Fuller robbed an employee at a Cingular store. According to the victim, Fuller asked him about pagers and then put a gun to his back and walked him to the money drawer. After taking the money, Fuller forced the victim into the store's office where he demanded additional money. Fuller then ordered the victim into a bathroom and told him not to come out or a guy watching the front of the store would "smoke your a—." The victim described Fuller's clothing as a dark blue sweatshirt and a "stocking cap" on his head.

All three victims correctly identified Fuller from photographic lineups. Subsequently officers executed a search warrant at Fuller's residence and located a black knit cap and a dark sweatshirt.

At trial, Fuller's wife testified that her rental car had been stolen from her place of employment on November 20, 2002, and that she had the only set of keys to the vehicle. However, a security guard at the place of employment testified that he saw Fuller with the vehicle on November 20, 2002. And a vehicle identification specialist testified that there was no damage to the vehicle's ignition or steering wheel lock, and there is no way to drive this particular vehicle without a key.

Fuller contends the evidence was insufficient to support the jury's verdict because (1) the witnesses' descriptions of the perpetrator varied, (2) none of the witnesses mentioned the noticeable tattoo on Fuller's neck in describing the perpetrator, (3) the rental car key could have been copied by someone, (4) no firearm was recovered from the rental car or Fuller's residence, (5) the photograph of Fuller used in the photographic lineup was nine years old, and (6) Fuller presented a valid alibi defense. Despite these arguments, we find the evidence was more than sufficient to support the jury's verdict. It is the jury's duty to weigh the evidence and assess the credibility of the witnesses.[4] The evidence was sufficient for a

---

[4] See *Grant v. State*, 289 Ga. App. 230, 234 (3) (b) (656 SE2d 873) (2008).

rational trier of fact to find Fuller guilty beyond a reasonable doubt of the charged offenses.

2. Fuller contends the trial court erred in allowing the state to introduce evidence of the Cingular store robbery as a similar transaction. Before similar transaction evidence can be introduced, the state must (1) identify a proper purpose for admitting the transaction, (2) show that the accused committed the separate offense, and (3) show a sufficient similarity between the independent offense and the crime charged so that proof of the former tends to prove the latter.[5] The decision to admit a similar transaction into evidence is within the discretion of the trial court, and we will not disturb the trial court's ruling absent an abuse of that discretion.[6] Here, the trial court ruled that the similar transaction evidence was admissible. We find no abuse of discretion.

First, the Cingular store robbery was introduced to show Fuller's bent of mind and course of conduct, both proper purposes for introducing similar transaction evidence.[7] Furthermore, similar transaction evidence is highly relevant when a criminal defendant presents an alibi defense because the evidence helps to prove the identity of the perpetrator.[8]

As for the second factor, proof of Fuller's identity as the Cingular store robber was established by the victim's identification of Fuller in the photographic lineup shown to the victim. The victim identified Fuller in the photographic lineup and again in court.

In addition, a sufficient similarity between the independent offense and the crime charged existed so that proof of the former tended to prove the latter. In fact, the incidents are virtually identical: the robberies occurred at cell phone stores located seven miles apart, the robberies took place within thirty-forty minutes of each other, and the perpetrator in both robberies wore a dark sweatshirt and a dark cap. In addition, in both instances the perpetrator used a handgun, forced the victims to empty cash out of the registers, made the victims walk into bathrooms after the robberies, and threatened the victims in the same manner. The trial court did not abuse its discretion by allowing the similar transaction evidence to be presented to the jury.

3. Fuller asserts the trial court erred in allowing the state to introduce evidence of the pretrial photographic identifications. We disagree. "Convictions based on a pretrial identification by photo-

---

[5] *Hill v. State*, 279 Ga. App. 666, 667 (1) (632 SE2d 443) (2006).

[6] See *Houston v. State*, 270 Ga. App. 456, 458 (1) (606 SE2d 883) (2004).

[7] See *Guinn v. State*, 224 Ga. App. 881, 882 (1) (a) (482 SE2d 480) (1997) (bent of mind and course of conduct are both proper purposes for introducing similar transaction evidence).

[8] See *Griggs v. State*, 251 Ga. App. 430, 431-432 (1) (554 SE2d 569) (2001).

graph and a subsequent identification at trial will be set aside only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."[9] And, a court does not need to consider whether there was a substantial likelihood of misidentification if it finds that the identification procedure was not impermissibly suggestive.[10]

Here, the record shows that the victims were shown a photographic array that contained six photographs, one of which was Fuller. All of the individuals in the photographs were young black males, and had short, close-cropped hair and moustaches. In addition, the photographs had the same background, were all the same size, and all showed head shots with the person looking straight at the camera. None of the photographs was distinctive or marked in any way. Furthermore, the victims were shown the photographic lineup separately. The victims were not told they must choose one of the persons depicted, nor did anyone inform them that a person had been arrested or suggest to them in any way which photograph, if any, they should select. The trial court did not err in finding that the photographic lineup was not impermissibly suggestive.

Moreover, even if this photographic lineup was impermissibly suggestive, there was not a substantial likelihood of misidentification in this case. The factors to consider include the opportunity of the witness to view the perpetrator of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the perpetrator, the level of certainty demonstrated by the witness, and the length of time between the crime and the confrontation.[11]

Here, both victims had an abundant opportunity to view Fuller's unconcealed face during the armed robbery of the small, well-lit store. Additionally, one of the victims had previously been the victim of an armed robbery, so whenever Fuller was not looking at her, she was looking "directly at his face." While the victims' descriptions of Fuller's weight and height varied, both victims described Fuller as a black male and gave detailed descriptions of Fuller's clothing. Furthermore, the length of time between the crime and the confrontation was just over 30 hours, and both victims demonstrated certainty that Fuller was the perpetrator of the crime. In fact, one of the victims testified she was 100 percent sure the person she identified was the perpetrator. The fact that Fuller's photograph was nine years old and the victims gave varying descriptions of the

---

[9] (Citations and punctuation omitted.) *Williams v. State*, 272 Ga. 828, 828 (2) (537 SE2d 39) (2000).

[10] Id.

[11] *Graham v. State*, 273 Ga. App. 187, 188 (1) (614 SE2d 815) (2005).

perpetrator merely goes to the weight and credit given to the evidence by the jury.[12] Based on the evidence, a substantial likelihood of misidentification did not exist. The trial court did not err in admitting evidence of the pretrial photographic identifications.

4. Fuller correctly asserts the trial court erred when it instructed the jury that, when considering the reliability of an eyewitness identification, the jury could "consider the level of certainty that is shown by the witness about his or her identification." The Supreme Court of Georgia has advised trial courts to refrain from giving this pattern jury instruction on eyewitness identification.[13] However, we find the giving of the charge in this case to be harmless error.

Giving the "level of certainty" charge is harmless error when there is other significant evidence corroborating the eyewitness identification and linking the defendant to the crime.[14] In the present case, sufficient corroborating evidence exists. One of the victims was able to get the tag number from the car used in the robbery, and this tag number came back to a car rented by Fuller's wife. In addition, Fuller was seen driving the car after the robbery occurred. While the wife claimed the car had been stolen, she did not report it stolen until several hours after the crime, and there was no damage to the car or its steering column indicating the car had been driven without the use of a key. In addition, the jury heard about another armed robbery committed by Fuller 20 minutes earlier, and police found clothing at Fuller's residence that matched the clothing worn by the robber. Although the trial court erred in reading the level of certainty charge to the jury, the error was harmless in light of the substantial corroborating evidence linking Fuller to the crime.

5. Fuller contends the trial court erred in refusing to give his requested jury charges regarding photographic lineups. However, both of his jury instructions were based on law regarding the admissibility of a photographic lineup, an issue to be determined by the judge, not the jury. Request number 2 stated as follows: "The pictures presented in a photographic lineup should be of the same . . . kind, size and appearance. If any photograph in the photographic lineup is impermissibly suggestive the identification should not be considered by the jury." Request number 3 stated: "If the identification was impermissibly suggestive[,] and under the totality of circumstances the suggestiveness gave rise to a substantial likelihood of misidentification[,] the in Court identification of the Defen-

---

[12] See *Price v. State*, 159 Ga. App. 662, 663-664 (1) (284 SE2d 676) (1981).

[13] *Brodes v. State*, 279 Ga. 435, 442 (614 SE2d 766) (2005).

[14] See *Smith v. State*, 284 Ga. 17, 23 (5) (663 SE2d 142) (2008).

dant by a witness shall not be considered by the jury." The trial court did not err in refusing to give these instructions.

Prior to trial, the trial court held a hearing to determine the admissibility of the photographic lineup evidence. Following this hearing, the trial court determined that the photographic lineup in the present case was not impermissibly suggestive and did not give rise to a substantial likelihood of misidentification. The jury charges requested by Fuller cite cases addressing a legal determination; they do not address whether the charges are appropriate for the jury.[15]

Because the admissibility of photographic identification evidence is an issue for a judge to determine, it would have been improper for the trial court to charge the jury regarding an issue strictly within the trial court's responsibility. Moreover, the trial court charged the jury regarding the reliability of identification evidence, the possibility of mistaken identity, and the state's burden to prove identity beyond a reasonable doubt. The trial court did not err in refusing to give the jury charges requested by Fuller.

6. Fuller contends the trial court erred in allowing one of the victims to testify that Fuller looked at her with a "mean, just horrible cold-hearted face." The admission or exclusion of evidence lies within the sound discretion of the trial court, and we will not disturb the trial court's exercise of its discretion absent a clear abuse of that discretion.[16] We find no abuse in the present case.

The record shows that the prosecutor asked the victim to describe Fuller's demeanor toward her during the armed robbery. The victim responded: "He had the face that he's looking at me right now, like, that mean, just horrible cold-hearted face." While the victim described Fuller's demeanor in an unflattering manner, the evidence was not inadmissible.

"Any evidence is relevant which logically tends to prove or disprove any material fact which is at issue in the case, and every act or circumstance serving to elucidate or throw light upon a material issue or issues is relevant."[17] Even where relevancy or competency of evidence is doubtful, the evidence should be admitted and its weight left to the jury.[18] And, evidence of a defendant's demeanor during the commission of a crime is relevant at trial, even if it incidentally places the defendant's character in issue.[19] The trial court did not abuse its discretion in overruling Fuller's objection to the statement.

---

[15] See *Miller v. State*, 270 Ga. 741, 743 (2) (512 SE2d 272) (1999); *Wright v. State*, 228 Ga. App. 779, 781 (2) (492 SE2d 680) (1997).

[16] See *Moclaire v. State*, 215 Ga. App. 360, 365 (7) (451 SE2d 68) (1994).

[17] (Citation omitted.) *Andrews v. State*, 268 Ga. App. 213, 214 (601 SE2d 746) (2004).

[18] Id.

[19] *Moore v. State*, 265 Ga. App. 511, 513-514 (3) (594 SE2d 734) (2004).

7. Fuller contends he received ineffective assistance of trial counsel. Specifically he argues that his trial attorney should have (a) filed a motion to suppress the search of his residence and objected when the state presented evidence derived from that search, (b) filed a motion to strike or objected when the state tendered evidence of the photographic lineup identifications, (c) filed a motion to strike or objected when the state elicited testimony regarding the similar transaction evidence, (d) filed a motion to strike or objected when the state tendered evidence of the photographic lineup identification by the similar transaction witness, (e) filed a motion to strike or objected when one of the victims described him as having a "mean, just horrible cold-hearted face," and (f) refrained from filing a notice of alibi defense before the state requested it. We find no error.

> [T]he burden of establishing the ineffective assistance of trial counsel is a heavy one that requires an appellant to establish both that counsel's performance fell below an objective standard of reasonableness, and that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the trial would have been different.[20]

The trial judge, who oversaw the trial and heard the evidence presented at the hearing on the motion for new trial, makes the findings on whether the performance was deficient and whether it prejudiced the defendant, findings that this Court does not disturb unless clearly erroneous.[21] In evaluating an attorney's performance, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.[22] We will not reverse on the basis of ineffective assistance of counsel unless trial counsel's conduct so undermined the proper functioning of the adversarial process that the trial could not reliably have produced a just result.[23]

Here, the trial court found that trial counsel presented a "vigorous and able defense" and rendered reasonably effective assistance of counsel. The court also found that Fuller failed to show that but for any alleged action or inaction taken by his counsel, the outcome of the trial would likely have been different. We agree.

(a) Fuller argues that his trial counsel should have moved to suppress or at least objected to evidence of the clothing found in his

---

[20] (Footnote omitted.) *Gibson v. State*, 291 Ga. App. 183, 184 (1) (661 SE2d 850) (2008).

[21] *Kilpatrick v. State*, 252 Ga. App. 900, 902 (1) (557 SE2d 460) (2001).

[22] *Rucker v. State*, 271 Ga. 426, 427 (520 SE2d 693) (1999).

[23] *Glass v. State*, 255 Ga. App. 390, 401 (10) (565 SE2d 500) (2002).

residence because the search warrant that authorized the search in Gwinnett County was issued by a judge in DeKalb County. Fuller argues that a DeKalb County judge does not have authority to issue a search warrant for a residence in Gwinnett County.

Contrary to Fuller's assertion regarding the location of his residence, the record shows that 3242 Misty Creek Drive is located in DeKalb County. In fact, Fuller himself testified that his residence was located in DeKalb County. Although the search warrant incorrectly identified the residence as being located in Gwinnett County, no evidence was presented at trial or any motions hearing that the residence was located in any county other than DeKalb. And the search warrant correctly listed directions to the DeKalb County residence.

"A premises description is sufficient if on its face it enables a prudent officer executing the warrant to locate the person and place definitely and with reasonable certainty."[24] Here, the search warrant clearly gave the correct DeKalb County address and directions to that address; it merely included a scrivener's error indicating the property was located in Gwinnett County. Based on the description in the warrant, a prudent officer could locate the residence with reasonable certainty. Thus, the scrivener's error was not so material as to destroy the integrity of the affidavit or the validity of the search warrant,[25] and the fruits of the search were properly admitted into evidence. Trial counsel was not ineffective in failing to move to suppress or object to the clothing found pursuant to the search warrant.

(b) Fuller argues his trial counsel was ineffective for not moving to strike or objecting when evidence was introduced regarding the photographic lineup. However, as we found in Division 3 of this opinion, the trial court did not err in admitting testimony regarding the photographic lineup. Given that the photographic array was not suggestive, Fuller cannot establish that his attorney was ineffective for failing to move to strike or object to the admission of the identification evidence.[26]

Additionally, the record shows that trial counsel did object to the photographic lineup evidence:

I'd like to make a standing and continuing objection to this method of identification. I've raised it in the record prior, but I would like to reiterate it. But I would object to the

---

[24] (Citation and punctuation omitted.) *Kelly v. State*, 184 Ga. App. 337, 337 (1) (a) (361 SE2d 659) (1987).

[25] Id. at 337-338 (1) (a).

[26] *Thomas*, supra at 362 (4) (b).

> entire proceedings as this method of identification is flawed
> for the reasons I've stated in the past.

The objection was overruled by the trial court. The trial court correctly found that trial counsel was effective in this regard.

(c) Fuller contends his trial counsel was ineffective because he failed to move to strike or object to the similar transaction evidence. However, as we discussed in Division 2 of this opinion, the trial court properly admitted evidence of the similar transaction. Thus, trial counsel cannot be ineffective in failing to object to the admission of this evidence.[27] Moreover, trial counsel did object to the evidence during a pretrial hearing regarding the admissibility of the evidence. He also objected at trial on the ground that the testimony was irrelevant. Trial counsel was not ineffective on this ground.

(d) Fuller asserts his trial counsel was ineffective for not moving to strike or objecting when evidence was introduced regarding the photographic lineup shown to the similar transaction witness. The record shows that this witness was shown the same photographic lineup as the two victims at issue in this case. As discussed in Division 3 of this opinion, this photographic array was not impermissibly suggestive. Additionally, the officer who showed the witness the array testified that he did not suggest that the witness pick one photograph over another, he did not threaten the witness, and he did not promise the witness anything. In fact, according to the officer, he told the witness to "take [your] time and if [you are] not 100 percent sure, then I don't want [you] to pick one."

There is also no substantial likelihood of misidentification. The witness testified that the incident location was well lit, the robber was in the store for approximately five minutes, the robber's face was not obstructed, and the witness looked at the robber's face in an effort to remember everything he could about him. The witness was shown the photographic lineup the day after the incident and chose Fuller's picture. The witness also identified Fuller in court as the person who robbed him. Since the photographic lineup presented to the similar transaction witness was properly admitted into evidence, trial counsel could not have been ineffective for failing to move to strike or object to the identification made by the similar transaction witness.[28]

(e) Fuller contends his trial counsel was ineffective for failing to move to strike or object when one of the victims described Fuller as having a "mean, just horrible cold-hearted face." However, as

---

[27] See *Arnold v. State*, 253 Ga. App. 307, 308 (1) (560 SE2d 33) (2002) (counsel is not deficient in failing to file a frivolous motion).

[28] See id.

discussed in Division 6 of this opinion, the victim's testimony went to Fuller's demeanor during the armed robbery. This demeanor was relevant evidence, and the trial court therefore did not err in allowing the victim's testimony. As such, Fuller's trial counsel was not deficient in failing to move to strike or object to the testimony.[29]

Moreover, the record shows that Fuller's trial counsel did, in fact, object to the testimony: "I'm going to object to the characterization that this gentleman, Mr. Fuller, is looking like that." The trial court, however, overruled trial counsel's objection, and trial counsel testified at the motion for new trial hearing that he did not want to bring further attention to the statement. Thus, instead of moving for a mistrial, trial counsel decided to argue at a later time that the victim did not have sufficient time to make a good identification. "The matter of when and how to raise objections is generally a matter of trial strategy."[30] Here, it cannot be said that trial counsel's decision to forego further objections in an effort to lessen attention brought to the statement was a professionally unreasonable choice.[31]

Fuller has also failed to show any harm by the admission of this statement. Surely, the jury would assume that a victim would not have a flattering opinion of the person who robbed her. Fuller has failed to prove that the outcome of the case would have been different if his trial counsel had succeeded in excluding this statement. The trial court did not err in finding that trial counsel was effective in this regard.

(f) Finally, Fuller claims his trial counsel was ineffective by disclosing Fuller's alibi defense prior to the state filing a demand for notice of alibi. However, Fuller has failed to show how trial counsel's premature filing rendered trial counsel ineffective or how the premature filing adversely affected the outcome of the trial.

OCGA § 17-16-5 (a) provides that upon written demand by the prosecuting attorney, a defendant "shall serve within ten days of the demand of the prosecuting attorney or ten days prior to trial, whichever is later, or as otherwise ordered by the court, upon the prosecuting attorney a written notice of the defendant's intention to offer a defense of alibi." Nothing in this statute prohibits defense counsel from filing the notice early. In addition, trial counsel testified at the motion for new trial hearing that the assistant district attorney told him he would be filing a demand for written notice of alibi defense, and the assistant district attorney did, in fact, subse-

---

[29] See *Thomas*, supra at 363 (4) (c).

[30] (Citation omitted.) *McKenzie v. State*, 284 Ga. 342, 349 (4) (e) (667 SE2d 43) (2008).

[31] See *Johnson v. State*, 277 Ga. App. 41, 47 (5) (c) (625 SE2d 411) (2005).

quently file such a demand two weeks later. Thus, Fuller cannot show any harm, and he surely cannot show that the outcome of the trial would have been different but for trial counsel's premature filing of the notice to present an alibi defense. This enumeration of error lacks merit.

*Judgment affirmed. Barnes and Phipps, JJ., concur.*

DECIDED JANUARY 6, 2009 — 

*Glynn R. Stepp*, for appellant.

*Daniel J. Porter, District Attorney, Jennifer M. Taylor, Assistant District Attorney*, for appellee.