A10A0534. TAYLOR v. THE STATE.
(696 SE2d 498)

BARNES, Presiding Judge.

A jury found Levi Daniel Taylor guilty of two counts of first degree vehicular homicide and two counts of second degree vehicular homicide. The trial court merged the second degree counts into the first degree offenses and sentenced Taylor to five years incarceration followed by ten years probation. Taylor appeals, challenging the admission of certain evidence and the length of his sentence. Finding no error, we affirm.

Viewed favorably to the jury's verdicts, the evidence shows that on July 3, 2005, Aaron Stephens and his fiancée, Monika Halbach, attended a party with Stephens's family in Tennessee. Shortly after 5:00 that afternoon, Stephens and Halbach left the gathering to drive to their home in Statesboro. With Stephens driving Halbach's red pickup truck, they headed south down I-75.

At some point in Bartow County, Steven Knapp, a motorist driving south in the center lane of I-75, saw the red pickup approaching him from the rear in the left lane. Knapp also noticed a

gray car behind the truck in the left lane. The pickup truck passed Knapp's vehicle, followed by the gray car, which was moving faster than the truck. Believing that the gray car was going to run into the back of the truck, Knapp slowed down to avoid the vehicles. At that point, the gray car attempted to maneuver around the pickup truck, but it "fish tailed" and struck the side of the truck. The collision caused the truck to roll over across the interstate into a wooded area off the roadway. Stephens and Halbach were ejected and died from injuries sustained during the rollover.

Knapp estimated that the pickup truck was traveling 80 mph when it passed his vehicle, and the gray car was traveling 85 to 90 mph. The posted speed limit in the area was 70 mph. Following the collision, officers identified Stephens and Halbach as the occupants of the pickup truck and Taylor as the driver of the gray car.

The State indicted Taylor for two counts of first degree (felony) vehicular homicide and two counts of second degree (misdemeanor) vehicular homicide relating to the deaths of Stephens and Halbach. The jury found Taylor guilty of all counts, and this appeal followed.

1. Taylor first argues that the trial court erred in admitting several traffic offenses as similar transactions. The State offered evidence that in March 2006, an officer cited Taylor for driving 65 mph in a 45 mph zone. Just six months later, in September 2006, Taylor again received a traffic citation, this time for traveling 52 mph in a 35 mph zone. Three months later, Taylor received yet another citation for failing to stop at a stop sign located at the end of an interstate exit ramp. According to the officer, Taylor "completely r[a]n through the [stop] sign without stopping to look either way."

On appeal, Taylor argues that the other crimes evidence was improper, unnecessary, and prejudicial. The State, however, proffered the evidence to prove Taylor's bent of mind and course of conduct in driving recklessly. Bent of mind and course of conduct are proper purposes for introducing similar transaction evidence. *Fuller v. State*, 295 Ga. App. 439, 441 (2) (672 SE2d 438) (2009). And such evidence is admissible "when there exists some logical connection between the similar transaction evidence and the charged offense so that the similar transaction evidence tends to establish the charged offense." *Fields v. State*, 223 Ga. App. 569, 571 (2) (479 SE2d 393) (1996).

With respect to the first degree vehicular homicide charges, the State was required to prove that Taylor caused the deaths of Stephens and Halbach by driving in a manner constituting reckless disregard for the safety of persons or property. See OCGA §§ 40-6-393 (a); 40-6-390 (a). The State alleged that he did so by speeding, making an abrupt lane change, and losing control over his vehicle. Taylor challenged these allegations at trial, arguing that the

deaths resulted solely from a tragic accident. A key issue at trial, therefore, was whether Taylor's conduct and manner of driving rose to the level of recklessness.

As we have previously noted, numerous other acts of "driving in excess of posted safe speeds can demonstrate a course of conduct wherein a defendant routinely drives his car in a manner exhibiting a disregard for the safety of persons or property." *Putman v. State*, 257 Ga. App. 902, 903 (1) (a) (572 SE2d 412) (2002). Taylor argues that the 2006 speeding citations cannot be viewed as "numerous" other acts and were insufficient to show course of conduct or bent of mind. Like the circumstance of this case, however, they involved speeds of 15 to 20 miles per hour over the speed limit. They also occurred within six months of each other and eight and fourteen months of the fatal collision. The facts surrounding the failure to stop citation also reflect similarities to the situation here. In this case, Taylor failed to adequately slow down for and avoid a vehicle he was overtaking, while the citation involved a failure to slow down for a stop sign at the end of an exit ramp.

"The issue of admissibility of extrinsic transactions has never been one of mere similarity." (Punctuation omitted.) *Fields*, supra at 571 (2). On the contrary, the ultimate question is "relevance to the issues in the trial of the case." (Punctuation omitted.) Id. And when such transactions are introduced to show bent of mind or course of conduct, a lesser degree of similarity is needed than when the evidence is offered for another purpose, such as to prove identity. Id. Given the facts surrounding the three citations Taylor received in 2006, as well as their temporal proximity to each other and the fatal collision, the trial court did not abuse its discretion in finding them logically connected and relevant to his manner of driving on July 3, 2005. See *Putman*, supra; *Fields*, supra; see also *Enloe v. State*, 239 Ga. App. 513, 514 (2) (520 SE2d 925) (1999) (trial court exercises discretion in admitting similar transaction evidence).

Alternatively, Taylor argues that the similar transaction evidence was prejudicial and unnecessary, given Knapp's testimony that he was speeding. Again, however, Taylor contested the issue of recklessness. We cannot conclude, therefore, that the evidence was unnecessary. Furthermore, "[a] trial court's finding that 'other transactions' evidence is relevant necessarily constitutes an implicit finding that the probative value of that evidence outweighs its prejudicial impact." *Putman*, supra at 905 (1) (d). The trial court found the 2006 traffic citations relevant, and it gave detailed instructions to the jury on the limited use of the evidence. Under these circumstances, we find no error in its admission. Id.

2. Taylor also argues that the trial court should have excluded various photographs at trial. Specifically, he complains that the trial

court erred in admitting a photograph of Stephens and Halbach taken just before they left the party on July 3, 2005; their driver's licenses, which included photographs; and numerous post-collision photographs showing their injuries.

A trial court exercises its discretion in admitting photographic evidence, and we will not reverse the court's ruling absent an abuse of discretion. See *Morris v. State*, 276 Ga. App. 775, 778 (3) (624 SE2d 281) (2005). We find no abuse here.

(a) *Photographs in life.* Taylor argues that the photograph depicting Stephens and Halbach at the July 3 party was unnecessary and prejudicial. In Georgia, however, "in life" photographs "are admissible for comparison with photographs of the victim after death to prove the identity of the victim." *Cornell v. State*, 277 Ga. 228, 230 (4) (587 SE2d 652) (2003). The photograph taken at the party was admissible to identify Stephens and Halbach at trial, as well as to demonstrate their condition shortly before the collision.

Taylor's complaint about the driver's license photographs similarly lacks merit. The evidence shows that first responders identified the victims through their driver's licenses, which were collected at the scene. Although Taylor argues that the licenses contained cumulative photographs of the victims in life, the photographs were relevant to identification and the police investigation, and neither was inflammatory. Accordingly, the trial court did not err in admitting the licenses. See *Sullivan v. State*, 242 Ga. App. 613, 614 (2) (530 SE2d 521) (2000).

(b) *Post-collision photographs.* We also find no error in the trial court's decision to admit photographs of the victims' bodies taken after the collision. Generally, pictures of the extent and nature of a victim's wounds are material and relevant, regardless of whether the cause of death is disputed. *Smith v. State*, 280 Ga. 490, 492 (2) (629 SE2d 816) (2006). Such photographs "are not objectionable merely because there is other evidence of the severity of those injuries." *Maxwell v. State*, 250 Ga. App. 628, 629-630 (2) (552 SE2d 870) (2001).

In this case, several post-collision photographs were used by the medical examiner at trial to explain the injuries suffered by Stephens and Halbach, and others showed the injuries observed by the investigating officer. Although Taylor argues that testimony establishing that the victims died in the collision made the injury photographs irrelevant, the State was required to prove that Taylor caused the deaths through his reckless driving. OCGA § 40-6-393 (a). The injuries — and the way the victims received them — were relevant to the State's case. The trial court, therefore, did not err in admitting the pictures. See *Smith v. State*, 279 Ga. App. 211, 213 (2) (630 SE2d 833) (2006) (photographs that are material and relevant

to any issue are admissible even if duplicative); *Bailey v. State*, 261 Ga. App. 291, 295 (6) (582 SE2d 487) (2003) (trial court enjoys broad discretion in balancing probative and prejudicial nature of crime scene photographs); *Maxwell*, supra at 629 (2) ("Photographs which are relevant to any issue in the case are admissible although they will have an effect upon the jury which the defendant feels is damaging to him.").

3. Next, Taylor claims that the trial court erred in admitting testimony from three individuals who were traveling in the area at the time of the collision, but did not see how the wreck occurred. These witnesses, however, offered testimony that corroborated and enhanced the description of events given by Knapp. Although they did not know who caused the wreck, they provided insight into who was driving the pickup truck, the trajectory of the truck after the initial collision, the rollover portion of the wreck, and the conditions of the roadway that day. The trial court did not err in finding such testimony relevant and admissible to show the circumstances surrounding the deaths. See *Tanner v. State*, 274 Ga. 240, 241 (2) (552 SE2d 831) (2001) (admission or exclusion of evidence on relevancy grounds lies within the sound discretion of the trial court); *Smith v. State*, 244 Ga. App. 165, 167 (2) (534 SE2d 903) (2000) (" 'Evidence of doubtful relevancy or competency should be admitted and its weight left to the jurors.' ").

4. Finally, Taylor argues that he should have been sentenced for misdemeanor vehicular homicide, rather than felony vehicular homicide, under the "rule of lenity." Lenity applies "when a statute, or statutes, establishes, or establish, different punishments for the same offense, and provides that the ambiguity is resolved in favor of the defendant, who will then receive the lesser punishment." *Campbell v. State*, 297 Ga. App. 387, 391 (4) (677 SE2d 312) (2009). It does not apply to statutes that unambiguously define different offenses. Id.

A person commits felony vehicular homicide by causing the death of another person through violation of OCGA § 40-6-390 (a), the reckless driving statute. See OCGA § 40-6-393 (a). Misdemeanor vehicular homicide results when a person causes the death of another by committing various traffic violations *not* including reckless driving. See OCGA § 40-6-393 (c). To support Taylor's felony conviction, therefore, the State was required to show not only that Taylor's manner of driving caused the deaths, but that it rose to the level of "reckless disregard for the safety of persons or property." OCGA § 40-6-390 (a). In contrast, the misdemeanor charge only required proof that the deaths resulted from a traffic violation such as speeding. OCGA § 40-6-393 (c).

Although Taylor suggests that speeding always constitutes reckless driving, we cannot agree. See, e.g., *Fraser v. State*, 263 Ga. App.

764, 765 (1) (589 SE2d 329) (2003) (noting that speeding *can* form the basis for a reckless driving conviction). In short, the felony vehicular homicide conviction demanded proof above and beyond that required for the misdemeanor offense. The crimes are not the same, do not address the same criminal conduct, and create no ambiguity with respect to the appropriate punishment. The rule of lenity, therefore, does not apply. *Campbell*, supra; *Selfe v. State*, 290 Ga. App. 857, 863 (3) (660 SE2d 727) (2008).

*Judgment affirmed. Blackburn and Bernes, JJ., concur.*

DECIDED JUNE 24, 2010.

*Samir J. Patel*, for appellant.

*T. Joseph Campbell, District Attorney, Richard A. Hull, Assistant District Attorney*, for appellee.