**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 4, 2018**

# In the Court of Appeals of Georgia

A18A0895. LEE v. THE STATE.

MERCIER, Judge.

A jury found Richard Stephen Lee guilty of possession of methamphetamine, possession of a firearm by a convicted felon, tampering with evidence, obstruction of an officer, and possession of drug-related objects. The trial court denied Lee's motion for new trial, and he appeals, challenging the sufficiency of the evidence supporting the tampering and obstruction charges. Lee also claims that the trial court erred in charging the jury, that two of his convictions should have been merged for sentencing purposes, and that he received ineffective assistance of counsel at trial. For reasons that follow, we affirm.

1. On appeal from a criminal conviction, we construe the evidence in the light most favorable to the verdict, and the defendant no longer enjoys a presumption of

innocence. See *Reddick v. State*, 298 Ga. App. 155 (679 SE2d 380) (2009). We do not weigh the evidence or resolve issues of witness credibility, but merely determine whether the evidence was sufficient for the jury to find the defendant guilty beyond a reasonable doubt. See id.

So viewed, the evidence shows that on February 10, 2015, officers went to Lee's home on Kincaid Avenue to serve him with an arrest warrant. When they arrived, Lee's truck was parked in the driveway. They knocked on the doors and windows of the home, but received no response. Believing that Lee was inside, the officers asked their supervisor to obtain a warrant to search the residence for Lee. Once the search warrant was issued, Lee's landlord unlocked the back door, and the police found Lee on the bedroom floor, attempting to crawl under the bed. No one else was in the home at the time.

While apprehending Lee, officers observed in plain view a bullet, drug paraphernalia, and suspected methamphetamine. The officers, who had received a tip that Lee was selling methamphetamine out of the house, secured a second warrant to search the residence and curtilage for contraband. Inside the bedroom where Lee was arrested, police located a rifle scope, a box of nine millimeter bullets, a locked safe, and a black bag containing suspected methamphetamine. When questioned about the

2

safe, Lee responded that he owned it, but that it housed his roommate's possessions and he "didn't want to be charged with anything inside of it." The officers opened the safe using a key from Lee's key ring, discovering a digital scale, two plastic spoons, and two clear pipes containing suspected methamphetamine.

In a bathroom trash can, officers found a plastic zip-lock bag, a plastic carton, and a pipe, all of which contained suspected methamphetamine. These items had been soaked in bleach, and the bathroom surfaces and walls were dripping wet with bleach. From Lee's truck, police also seized a digital scale, a metal spoon covered with suspected methamphetamine residue, and a nine millimeter handgun located inside of a backpack. Although Lee insisted that the gun belonged to a friend, he admitted that the backpack was his.

An officer explained, based on his training and experience, that spoons and scales such as those found during the search are typically used to weigh and prepare methamphetamine for distribution. The police field-tested a sample of the suspected methamphetamine recovered from the black bag in the bedroom. The field test was positive for methamphetamine, and the state crime lab subsequently confirmed that result.

In his defense, Lee offered testimony from his girl friend, who asserted that she became angry with Lee, "planted" drugs and drug paraphernalia in his house, then convinced her father to report Lee to the police. Evidently, however, the jury disbelieved her and found Lee guilty of possession of methamphetamine, tampering with evidence, obstruction of an officer, and possession of drug-related objects. In a second phase of the trial, the State established that Lee had previously been convicted of several felonies. Based on this evidence, the jury also found Lee guilty of possession of a firearm by a convicted felon.

(a) Lee first challenges the sufficiency of the proof supporting his conviction for tampering with evidence. The indictment charged that Lee "did knowingly alter physical evidence, to wit: methamphetamine, . . . with intent to prevent the apprehension of said methamphetamine . . . and obstruct the prosecution of the accused." Lee contends the State failed to prove that he altered methamphetamine, as alleged. We disagree.

Pursuant to OCGA § 16-10-94 (a) (2014),[1] "[a] person commits the offense of tampering with evidence when, with the intent to prevent the apprehension or cause the wrongful apprehension of any person or to obstruct the prosecution or defense of any person, he knowingly . . . alters . . . physical evidence." The search of Lee's home revealed drug paraphernalia and suspected methamphetamine, a sample of which tested positive for the drug. Officers also found additional drug-related objects and suspected methamphetamine that had been covered in bleach. One officer testified that pouring bleach on methamphetamine "would destroy the evidence." And the officer who performed the field test at the scene asserted that he could not test any bleach-covered substance because "it is dangerous to mix chemicals like [bleach] with those test kits. It can be explosive."

Given this evidence, as well as testimony that the bleach in the bathroom was "actively dripping," the jury was authorized to conclude that Lee, who was alone in the house when the police entered, knowingly altered methamphetamine to obstruct the prosecution. See OCGA § 16-10-94 (a) (2014); *Kirchner v. State*, 322 Ga. App. 275,

---

[1] We rely on the version of the statute in effect at the time the crimes were committed in February 2015. See *Woodward v. State*, 342 Ga. App. 499, n.1 (804 SE2d 153) (2017).

284 (3) (a) (ii) (744 SE2d 802) (2013) (particularly given other marijuana found in the home, tampering conviction supported by evidence that, as police waited for search warrant, defendant washed plastic bags in dishwasher, leaving only a residue of what officers believed to be marijuana). Compare *King v. State*, 317 Ga. App. 834, 840-841 (2) (c) (733 SE2d 21) (2012) (evidence of tampering insufficient where police saw remnants of suspected marijuana in defendant's mouth during traffic stop, but officers did not see her place the substance in her mouth, did not test the substance, did not test the defendant's urine or blood for drugs, and did not recover any drugs or drug paraphernalia at scene).

(b) Lee also argues that the evidence was insufficient to support his misdemeanor obstruction conviction. Generally, "a person who knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties is guilty of a misdemeanor." OCGA § 16-10-24 (a) (2014). The State alleged that Lee knowingly obstructed the officers "by failing to comply with the officers' request that [he] answer the door" at the Kincaid Avenue home when they attempted to serve the arrest warrant. Without dispute, Lee did not open the door when the officers knocked. He contends, however, that the jury could not have found

6

that he *knowingly* hindered the officers because the State never proved that they identified themselves as law enforcement personnel.[2]

"To establish that the obstruction was done 'knowingly and wilfully,' there must be proof that the defendant knew that the person he was obstructing was a law enforcement officer." *Watson v. State*, 328 Ga. App. 832, 835 (1) (763 SE2d 122) (2014) (citations omitted). The record does not reveal whether the officers identified themselves when they knocked, and we do not know if they were wearing police uniforms or badges or driving a marked police vehicle. But the outside of the home was equipped with video cameras. And when the officers entered, they found Lee attempting to hide under the bed. The evidence further shows that Lee tampered with drug-related contraband shortly before he was apprehended. Given the totality of these circumstances, the jury was authorized to conclude that Lee knew the people knocking

---

[2] Lee's enumeration of error focuses exclusively on the knowledge element of obstruction. He does not contend, and thus we do not address, whether his failure to open the door for police obstructed or hindered the officers in the lawful discharge of their duties. But see *Beckom v. State*, 286 Ga. App. 38, 42 (2) (648 SE2d 656) (2007) ("The state has cited no authority, and we have found none, for the proposition that an individual's failure to answer the phone and failure to answer a knock on the door constitutes obstruction under OCGA § 16-10-24 (a), where there is no evidence that the individual knew of an on-going investigation, and certainly no evidence that the individual was attempting 'knowingly and willfully' to impede such an investigation.").

at his door were police officers. See *Reddick*, supra at 156 (1) ("Although the evidence at trial did not show that the officers identified themselves as police officers, that they were wearing police uniforms or badges, or that the patrol car was clearly marked as a police car or had a blue light on top, other evidence in the record supports [the defendant's] conviction" for obstruction).

2. In three claims of error, Lee argues that the trial court improperly instructed the jury. Lee, however, did not raise a particularized objection to the trial court's jury charge. Instead, he made a broad, generalized objection, stating: "[O]ut of formality, the defense objects to each and every charge that is a misstatement of law or misread or not applicable to the facts." Our review of the court's instructions, therefore, is limited to plain error, which results in reversal only "if the jury instruction was erroneous; the error was obvious; the instruction likely affected the outcome of the proceedings; and the error seriously affects the failure, integrity, or public reputation of judicial proceedings." *Lauderback v. State*, 320 Ga. App. 649, 655 (5) (740 SE2d 377) (2013) (citation omitted). See also OCGA § 17-8-58 (b) (failure to raise specific objection to jury charge precludes appellate review "unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties").

8

(a) Lee asserts that the trial court's instruction regarding possession of drug-related objects included ways of committing the crime that were not alleged in the indictment . According to Lee, this instruction improperly expanded the indictment, allowing jurors to find him guilty of an uncharged offense. Even if the instruction was overly broad, however, any such error was cured by the jury charge as a whole. See *Simpson v. State*, 302 Ga. 875, 877 (2) (808 SE2d 718) (2017).

The record shows that the trial court informed jurors that the State bore the burden of proving "every material allegation of the indictment" beyond a reasonable doubt. The indictment was sent out with the jury during deliberations. And after defining the offense of possessing drug-related objects, the court immediately drew jurors' attention back to the indictment, instructing that the jury would be authorized to return a guilty verdict only if it found "beyond a reasonable doubt, that [Lee] . . . on the date alleged in the indictment, did then and there commit the offenses as alleged." The instructions as a whole properly limited the jury's consideration to the crimes charged in the indictment. Lee, therefore, "cannot establish reversible error, plain or otherwise." Id. See also *Lauderback*, supra at 653 (4) (b) ("[I]t is a fundamental rule in Georgia that jury instructions must be read and considered as a whole in determining whether the charge contained error.").

9

(b) The defense stipulated at trial that it did not challenge the chain of custody with respect to physical evidence presented by the State. The trial court notified jurors of this stipulation in its jury charge, stating: "The parties have entered into a stipulation that has been approved by the Court about the following fact: And that is that there is no problem with the chain of custody of the evidence in the case." The court then explained that "[w]here parties stipulate facts, this is in the nature of evidence. You may take that fact or those facts as given without any necessity of further proof."

Lee first argues that the trial court should not have informed jurors about the stipulation because the court – not the jury – makes findings as to chain of custody. A trial court, however, does not err in charging the jury on chain of custody. See generally *Coleman v. State*, 317 Ga. App. 409, 409-411 (1) (731 SE2d 94) (2012). Moreover, Lee affirmatively stated that he had no objection to "a stipulation charge as to the chain of custody." He thus waived any claim that the trial court improperly referenced the stipulation in its jury charge. See *Woodward v. State*, 296 Ga. 803, 806 (2) (771 SE2d 362) (2015) (appellate court may not reverse for plain error in the trial court's jury charge if the defendant affirmatively waived the claimed error).

Lee further complains that the language of the stipulation charge led the jury to believe that "all of the contraband in the case was adequately connected to" him. The

10

trial court's instruction, however, did not tie the evidence to Lee. It merely recited the stipulation reached by the parties. Although the trial court did not elaborate on the meaning of "chain of custody," Lee did not request additional explanation, and the court fully instructed jurors on the burden of proof, reasonable doubt, and the different types of evidence. Under these circumstances, we cannot find that any error in the stipulation charge impacted the verdict or seriously affected "the failure, integrity, or public reputation of judicial proceedings." *Lauderback*, supra at 655 (5). Lee, therefore, cannot demonstrate plain error. See *Kelly v. State*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011) (establishing plain error "is difficult, as it should be") (citation and punctuation omitted).

(c) Lee contends that the trial court erred in failing to instruct the jury on the State's burden of proof under OCGA § 24-14-6, which provides: "[t]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." The record shows, however, that Lee did not submit a written request to charge on OCGA § 24-14-6. And "[a]bsent a written request, a trial court is required to charge on the law of circumstantial evidence as set forth in . . . OCGA § 24-14-6 *only* if the State's case against the defendant is wholly

11

circumstantial." *Walker v. State*, 295 Ga. 688, 691 (2) (763 SE2d 704) (2014) (citation omitted; emphasis supplied).

According to Lee, the evidence tying him to the contraband was circumstantial. The State undoubtedly offered some circumstantial evidence at trial. But it also presented direct evidence against Lee, including his admission that the safe and backpack in which the police found contraband belonged to him. See *Jones v. State*, 243 Ga. 584, 585 (1) (255 SE2d 702) (1979) (statements by defendant and certain police testimony constituted direct evidence). Because the State's case was not wholly circumstantial and Lee did not request a circumstantial evidence instruction in writing, the trial court was not required to charge the jury on OCGA § 24-14-6. See *Walker*, supra.

3. Lee claims that the trial court should have merged his conviction for possession of drug-related objects into his conviction for possession of methamphetamine for purposes of sentencing. In determining whether one crime is included in another, and thus merges as a matter of fact, we apply the "required evidence" test and assess "whether conviction for one of the offenses is established by proof of the same or less than all the facts required to establish the other crime." *Grissom v. State*, 296 Ga. 406, 410 (1) (768 SE2d 494) (2015). In Lee's view, these

12

convictions merged because "the only evidence that [he] possessed the scales and pipe for the purpose of weighing and inhaling a controlled substance . . . is the same evidence relied upon by the State to prove that he knowingly possessed methamphetamine."

This claim lacks merit. The black bag found in the bedroom contained a substance that tested positive for methamphetamine, which supported the jury's verdict with respect to possession of methamphetamine. See OCGA § 16-13-30 (a) (2014) (defining possession of a controlled substance). The verdict as to drug-related objects was authorized by other evidence that scales typically used to weigh methamphetamine for packaging were located in Lee's home and vehicle. See OCGA § 16-13-32.2 (a) (2014) (defining possession of drug-related objects). Given that the conviction for possession of methamphetamine did not require proof that Lee possessed drug-related objects, and the conviction for possession of drug-related objects did not require proof that he possessed methamphetamine, the convictions did not merge. See *Grissom*, supra at 410; see also OCGA § 16-13-30 (a) (2014); OCGA § 16-13-32.2 (a) (2014).

4. Finally, Lee argues that he received ineffective assistance of counsel at trial. To prevail on this claim, Lee "must show both that his trial counsel provided deficient

13

performance and that, but for the deficiency, there is a reasonable probability that the outcome of the proceeding would have been different." *Prince v. State*, 295 Ga. 788, 791 (2) (764 SE2d 362) (2014) (citation omitted). He has not made the required showing here.

(a) According to Lee, trial counsel should have moved to suppress evidence obtained when police entered the Kincaid Avenue home pursuant to the first search warrant, which authorized a search for Lee's "person." Lee contends that this search warrant was invalid for several reasons, including that OCGA § 17-5-21 (a) generally does not permit a search warrant for a "person."

The trial court rejected this claim, finding that while the first search warrant was improper, officers were authorized to enter the home via the outstanding arrest warrant. "For Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Francis v. State*, 345 Ga. App. 586, 589 (1) (814 SE2d 571) (2018) (citations and punctuation omitted). Lee does not challenge the validity of the arrest warrant or dispute that he lived in the house. And given the presence of Lee's car in front of the home, as well as information received by police, officers had reason to believe he was inside when they

14

arrived to serve the arrest warrant. See *Jones v. State*, 314 Ga. App. 247, 249 (1) (723 SE2d 697) (2012) (police reasonably believed subject of arrest warrant was in house based upon information from neighbor and the fact that subject's car was in front of house).

Under these circumstances, the officers "were entitled to enter and to search anywhere in the house in which the subject of that warrant might be found." *Francis*, supra (citation and punctuation omitted). Once inside the home, they also were authorized to seize any contraband in plain sight.[3] See *Wall v. State*, 291 Ga. App. 278, 279 (661 SE2d 656) (2008) ("A police officer may seize what is in plain sight if, as here, he is in a place where he is constitutionally entitled to be."). Regardless of whether the search warrant for Lee's "person" was valid, trial counsel was not ineffective in failing to file a motion to suppress. See *Prince*, supra at 791 (2) (a) ("When trial counsel's failure to file a motion to suppress is the basis for a claim of ineffective assistance, Appellant must make a strong showing that the damaging

---

[3] Lee's appellate counsel conceded at the hearing on the motion for new trial that "if [the officers were] executing an arrest warrant and they see this is in plain view, which I think they did, then they didn't violate the rules."

15

evidence would have been suppressed had counsel made the motion.") (citation and punctuation omitted).

(b) Lee also argues that trial counsel should have moved to suppress evidence seized pursuant to the second search warrant, which authorized a contraband search of the residence and curtilage, because (1) the affidavit supporting that warrant did not establish probable cause to search, and (2) the affidavit transposed his middle and last names, referring to him as Richard Lee Stephens, rather than Richard Stephen Lee. The trial court rejected this claim below, concluding that probable cause supported the search and that the mistake in Lee's name was a "scrivener's error" that did not affect the warrant's validity.

In determining whether a supporting affidavit provides sufficient probable cause for a search warrant,

> a magistrate must simply make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. On appeal, we give substantial deference to the magistrate's decision to issue the warrant,

16

and we construe the evidence in favor of the court's decision that probable cause existed.

*State v. Alvin*, 296 Ga. App. 402, 403 (674 SE2d 348) (2009) (citation omitted).

The affidavit in this case established that the testifying officer had assisted in obtaining and executing over 150 search warrants relating to narcotics and other criminal investigations. It described information that the officer had gleaned "[a]s a result of [his] training and experience in criminal investigations and obtaining search warrants." It then stated:

> On February 10th, 2015, agents with Spalding County Special Operations executed a search warrant at [] Kincaid Ave for the person of Richard Lee Stephens. Stephens was found hiding in the master bedroom. In plain view there was a bullet located on the dresser to a small caliber handgun. Stephens is a convicted felon. Also in plain view there was packaging material associated with illegal drug distribution. There was a clear ziplock bag laying in plain view of the kitchen floor that contained a white powdery substance.

Given the totality of these circumstances, the magistrate had a substantial basis for finding a fair probability that contraband or evidence of a crime would be located in the Kincaid Avenue home, particularly with respect to drug-packaging materials. See *Alvin*, supra at 404 ("Probable cause does not demand the certainty we associate with

formal trials.") (citation and punctuation omitted). We likewise conclude that probable cause existed for the second search warrant. Although Lee complains that the testifying officer did not detail how he knew certain items were associated with illegal drug distribution, the affidavit established his significant training and experience in narcotics and other criminal investigations. See *Cleveland v. State*, 290 Ga. App. 835, 837 (1) (660 SE2d 77) (2008) (finding sufficient probable cause for search warrant after reviewing supporting affidavit "as a whole"), *aff'd*, 285 Ga. 142 (674 SE2d 289) (2009).

We also agree with the trial court that the affidavit's transposed name did not invalidate the warrant. Notwithstanding the misnomer, the search warrant was fully supported by the officers' prior observations in the home. See generally *Fuller v. State*, 295 Ga. App. 439, 446 (7) (a) (672 SE2d 438) (2009) (scrivener's error in physical description of address "was not so material as to destroy the integrity of the affidavit or the validity of the search warrant"); *Kelly v. State*, 184 Ga. App. 337, 338 (1) (c) (361 SE2d 659) (1987) (although supporting affidavit contained misinformation, search warrant valid where affidavit's "remaining content [was] more than sufficient to establish probable cause"). Accordingly, Lee has not shown that he received ineffective assistance of counsel on this ground. See *Fuller*, supra.

*Judgment affirmed. Dillard, C. J., and Doyle, P. J., concur.*